liBROWN, Judge.
Danny Moore was stopped and tested for driving his personal vehicle while intoxicated. Moore’s blood alcohol was measured at .199% and he was subsequently arrested. This record does not include information concerning Moore’s prosecution or non-prosecution on criminal charges. Moore was the holder of a commercial class “A” driver’s license. Because of the blood alcohol reading, Moore’s license was suspended under LSA-R.S. 32:667. Moore sought judicial review of the suspension of his driving privileges and/or alternatively for the issuance of a restricted commercial driver’s license. The trial court affirmed the suspension, but granted a hardship driver’s license to Moore to drive commercial vehicles. The appeal of the Department of Public Safety and Corrections (DPSC) questions the authority of the trial judge to grant a hardship commercial license. For the reasons set forth herein, we reverse the issuance of a restricted/hardship license.

DISCUSSION

There are three types of driver’s licenses available in Louisiana: Commercial Driver’s License (Classes “A”, “B” and “C”), Chauffeur’s License (Class “D”) and Personal Vehicle Driver’s License (Class “E”). LSA-R.S. 32:408(B). A Louisiana driver may not possess more than one driver’s license at any one time. LSA-R.S. 32:421. Moore was issued a commercial class “A” license.
Moore’s license was suspended under the provisions of LSA-R.S. 32:667. Under LSA-R.S. 32:668, he requested and was granted a hardship license to drive commercial vehicles. These articles deal exclusively with the suspension and restriction of driving privileges for failure to pass or submit to tests for alcohol. These articles refer to no particular type of license and therefore apply to all.
|2In 1989, the legislature created a series of provisions relating to the suspension and restriction of commercial driving privileges. LSA-R.S. 32:414.2 et seq. The thrust of these articles is to provide stronger penalties for commercial drivers who commit certain enumerated offenses while operating a commercial motor vehicle. The last sentence in LSA-R.S. 32:414.2(A)(l)(a), however, states that “[i]f a driver [commercial] is disqualified from operating a group “D” or “E” motor vehicle, he shall be disqualified from operating a commercial motor vehicle.” Therefore, LSA-R.S. 32:414.2(A)(l)(a) included within its purview suspension or revocations under other provisions, such as LSA-R.S. 32:667. Thus, one can be disqualified from driving a commercial motor vehicle either for committing an offense set forth in LSA-R.S. 32:414.2, or for being disqualified from driving a class “D” or “E” vehicle. The suspension of Moore’s driving privileges under LSA-R.S. 32:667 disqualified him from operating any vehicle, including class “D” and “E” vehicles.
Whereas LSA-R.S. 32:414.2(A)(l)(a) provides for the suspension, revocation or cancellation of driving privileges, LSA-R.S. 32:414.2(A)(l)(b) goes further to prohibit the granting of a hardship commercial license:
There shall be no economic hardship license to operate a commercial motor vehicle; however, an economic hardship license may be granted to operate a Group “E” “Personal Use Motor Vehicle” or a Group “D” license provided the applicant for an economic hardship license is otherwise eligible for such license. These disqualifications shall supplement and be in addition to any other sanctions that may be imposed.
The trial court erroneously granted Moore a hardship license for commercial vehicles while prohibiting his driving private vehicles or any vehicle for his personal use. The action of the trial court is clearly contrary to the statute. This court explained in Owen v. State, DPSC, 25402 (La.App. 2d Cir. 01/19/94), 631 So.2d 32, that determination of legislative intent is the paramount ^consideration in statutory interpretation. Courts should construe statutes to give them the meaning intended by the legislature and *646 to avoid absurd results. A construction should be placed on the provision which is consistent with the express terms of the statute and the obvious legislative intent.
The obvious legislative intent embodied in LSA-R.S. 32:414.2 et seq. is a desire to hold vehicle operators with commercial licenses to a higher standard. It logically follows that the sanction of no hardship license to operate commercial vehicles applies to all statutory suspensions or revocations. Accordingly, we reverse the granting of the hardship commercial license and affirm the suspension of Moore’s driving privileges. Costs are assigned to plaintiff.
AFFIRMED IN PART, REVERSED IN PART.